UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| Casey Ervin Rogers, | ) C/A No. 4:19-cv-00570-DCC |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) ORDER |
| Clayton Homes Florence; Southern Energy Homes, Inc.; CMH Homes, Inc., | ) |
| | ) |
| Defendants. | ) |

This matter is before the Court on Defendants' Motion to Dismiss and Compel Arbitration. ECF No. 5. Plaintiff filed a Response in Opposition, and Defendants filed a Reply. ECF Nos. 7, 8.

## **BACKGROUND**

On or about February 13, 2017, Plaintiff purchased "The Louis" mobile home from Southern Homes of Florence. ECF No. 1-1 at 15. Defendant Clayton Homes of Florence[1] arranged delivery and set-up of the mobile home. *Id*. Defendant Southern Energy Homes, Inc. manufactured the mobile home. ECF Nos. 1-1 at 16, 5-1 at 2.

Plaintiff contends that the mobile home was damaged significantly during transport. ECF No. 1-1 at 16. He asserts that the "ceilings were cracked, exposed beams in the home were broken, walls were broken and falling, light fixtures had fallen out of the

---

[1] According to Defendants, Clayton Homes of Florence is a trade name for CMH Homes, Inc. and is not a separate corporate entity. ECF No. 5 at 1. Plaintiff has not disputed this assertion.

ceiling, crown molding and trim was missing, and the vinyl siding was damaged." *Id*. Plaintiff alleges that a crew sent by one or all of the Defendants came to repair the mobile home, and he and his family moved in sometime in March 2017. *Id* at 16–17. He contends that, after they moved in, several problems with the mobile home became apparent, including but not limited to the plumbing, the patio, the carpeting, the vinyl, the trim and molding, and the walls. *Id*. at 16–19.

The Retailer Closing Agreement and Sales Agreement are silent regarding arbitration. *See* ECF No. 5-2, 7-2. However, included as part of the sales transaction with Defendant CMH Homes, Inc., was a document labeled "Binding Dispute Resolution Agreement" ("the DRA"). ECF No. 5-6. The DRA includes an arbitration provision which states, in relevant part:

> The Parties agree to mandatory, binding arbitration ("Arbitration") of all Claims that are not resolved in Mediation . . . . This Agreement applies to all pre-existing, present, or future disputes, claims, controversies, grievances, and causes of action against Seller, including, but not limited to, common law claims, contract and warranty claims, tort claims, statutory claims, administrative law claims, and any other matter in question, not otherwise excepted herein, arising out of or relating to (i) the modular or manufactured home(s) purchased, sold, owned, occupied, and/or delivered in any transaction with Buyer or Beneficiaries . . ., (ii) the documents related to the purchase and sale of the Home (including but not limited to the Retailer Closing Agreement, any Purchase or Sales Agreement, buyer's order, supplemental invoice, and other instruments and agreement whereby Seller purports to convey or receive any goods or services to or from Buyer or Beneficiaries . . . ), (iii) any products goods services,

insurance, supplemental warranty, service contract, and real property . . . sold under or referred to in the Contract, (iv) any events leading up to the Contract, (v) the collection and servicing of the Contract, (vi) the design and construction of the Home, and (vii) the interpretation, scope, validity and enforceability of the Contract . . . .

ECF No. 5-6 at 2.[2]

This action was filed in the Williamsburg County Court of Common Pleas and was removed to this Court on February 26, 2019. ECF No. 1. Plaintiff brings claims for breach of contract, negligent construction and repairs, breach of warranty, and unfair trade practices. ECF No. 1-1 at 19–24.

## **APPLICABLE LAW**

The Federal Arbitration Act ("FAA") establishes a "strong federal public policy in favor of enforcing arbitration agreements" and is designed to "ensure judicial enforcement of privately made agreements to arbitrate." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 217, 219 (1985). The FAA was enacted "in 1925 in order 'to reverse the longstanding judicial hostility to arbitration agreements that had existed at English common law and had been adopted by American courts, and to place arbitration agreements on the same

---

[2] The DRA states that it is between the Buyer and the Seller, defined as CMH Homes, Inc. ECF No. 5-6 at 4. The DRA further states that it applies to intended beneficiaries of the DRA, including "(i) manufacturers of the Home [and] (ii) contractors including without limitation, contractors involved in delivery and set-up of Buyer's Home." Thus, the DRA is applicable to the claims against Defendant Southern Energy Homes, Inc.

3

footing as other contracts.'" *Snowden v. CheckPoint Check Cashing*, 290 F.3d 631, 639 (4th Cir. 2002) (quoting *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 24 (1991)). "Underlying this policy is Congress's view that arbitration constitutes a more efficient dispute resolution process than litigation." *Adkins v. Labor Ready, Inc.*, 303 F.3d 496, 500 (4th Cir. 2002) (citation omitted).

The FAA provides that arbitration clauses in contracts involving interstate commerce "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Under the FAA, a district court must compel arbitration and stay court proceedings if the parties have agreed to arbitrate their dispute. *Id*. §§ 2, 3. But, if the validity of the arbitration agreement is in issue, a district court must first decide if the arbitration clause is enforceable against the parties. *Id*. § 4. "'[A]s a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration.'" *Drews Distrib., Inc. v. Silicon Gaming, Inc.*, 245 F.3d 347, 349 (4th Cir. 2001) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983)). "A court should not deny a request to arbitrate an issue 'unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.'" *Id*. at 349–50 (quoting *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582–83 (1960)). Nevertheless, "a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *Warrior & Gulf Navigation Co.*, 363 U.S. at 582.

A party seeking to compel arbitration must do so by establishing the following four elements: (1) the existence of a dispute between the parties; (2) a written agreement that includes an arbitration provision purporting to cover the dispute; (3) the relationship of the transaction, as evidenced by the agreement, to interstate or foreign commerce; and (4) the failure, neglect, or refusal of a party to arbitrate the dispute. *Am. Gen. Life & Accident Ins. Co. v. Wood*, 429 F.3d 83, 87 (4th Cir. 2005); *see also Whiteside v. Teltech Corp.*, 940 F.2d 99, 102 (4th Cir. 1991); *Energy Absorption Sys. v. Carsonite Int'l*, 377 F. Supp. 2d 501, 504 (D.S.C. 2005). "[E]ven though arbitration has a favored place, there still must be an underlying agreement between the parties to arbitrate." *Adkins*, 303 F.3d at 501 (internal quotations and citation omitted). "Whether a party agreed to arbitrate a particular dispute is a question of state law governing contract formation." *Id*. (citing *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)). "[T]he party resisting arbitration bears the burden of proving that the claims at issue are unsuitable for arbitration." *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 81 (2000). Thus, where a valid arbitration agreement exists and covers the claims at issue, this Court has "no choice but to grant a motion to compel arbitration." *Adkins*, 303 F.3d at 500 (4th Cir. 2002).

## DISCUSSION

*Motion to Compel Arbitration*

In his response to Defendants' motion, Plaintiff argues that Defendants have failed to establish the existence of a valid, enforceable contractual agreement to arbitrate claims

in this case. ECF No. 7. Specifically, Plaintiff argues that there was no consideration for the DRA, the Sales Agreement contains a "merger clause" indicating that the parties intended to treat the sales contract as a complete integration of their agreement, and that he was not aware that he electronically signed the document.

All parties agree that South Carolina law applies to determine whether a contract was formed. ECF Nos. 7 at 3; 8 at 2–6. With respect to his argument that there was no consideration paid for the DRA, "[u]nder South Carolina law, a mutual promise to arbitrate constitutes sufficient consideration to support a stand-alone arbitration agreement." *Noffz v. Austin Maint. & Constr., Inc.*, C/A No. 8:16-cv-00208-MGL-KFM, 2016 WL 4385872, at *5 (D.S.C. July 25, 2016), *Report and Recommendation adopted,* C/A No. 8:16-cv-00208-MGL, 2016 WL 4269498 (D.S.C. Aug. 15, 2016) (citing *O'Neil v. Hilton Head Hosp.*, 115 F.3d 272, 275 (4th Cir. S.C. 1997)). Accordingly, Plaintiff's argument is not well taken.

The Court further finds that Plaintiff's argument that the DRA is invalid under the parole evidence rule is likewise unavailing. The Sales Agreement states that "there are no other agreements, written or oral, *unless evidenced in writing and signed by the parties*." ECF No. 7-2 at 2 (emphasis added). Here, the DRA was electronically[3] signed by the parties, as contemplated by the language in the Sales Agreement. ECF No. 5-6 at 5. This Court has previously found that a stand-alone arbitration agreement is

---

[3] To the extent that Plaintiff argues that, because his signature was electronic, it should not be considered binding, the Court disagrees. *See* S.C. Code Ann. § 26-6-70(1) ("An electronic signature satisfies a law requiring a signature.").

6

enforceable where a finance agreement stated that "[t]his contract contains the entire agreement between you and us relating to this contract." *Bowser v. Burns Chevrolet Cadillac, Inc.,* C/A No. 0:16-cv-01551-TLW, 2017 WL 10810029, at *2 (D.S.C. May 3, 2017) (finding that the parole evidence rule and the quoted language did not "merge or supersede the Arbitration Agreement"); *see also Cara's Notions, Inc. v. Hallmark Cards, Inc.*, 140 F. 3d 566, 570 (4th Cir. 1998).

Finally, the Court finds Plaintiff's assertion that he was not informed he was signing an agreement to arbitrate fails. Plaintiff states that he was told to "click a box" which contained the DRA and other documents. As stated above, Plaintiff's electronic signature is enforceable. Moreover, because he signed the document, Plaintiff is presumed to know the DRA's terms and is bound by them even if he does not remember reading it. *See Sanders v. Allis Chalmers Mfg. Co.*, 115 S.E.2d 793, 796 (S.C. 1960).[4]

Turning to the four-factor test articulated by the Fourth Circuit, the Court finds that the elements required to compel arbitration are satisfied. *See Am. Gen. Life & Accident*

---

[4] Further, the Court agrees with Defendants' assertion that any argument by Plaintiff that his electronic signature is unenforceable as to the DRA would, in fact, question the enforceability of the entire transaction. Such a challenge should be decided by the arbitrator. *See Berkeley Cty. Sch. Dist. v. HUB Int'l Ltd.*, 363 F. Supp. 3d 632, 641 (D.S.C. Jan. 29, 2019) ("[C]ourts generally have the power to determine the validity of an arbitration clause before requiring the parties to arbitrate an issue. However, if a party is challenging the validity of the container contract, the challenge must be heard by an arbitrator.") (discussing *Rent-A-Center, West, Inc. v. Jackson,* 561 U.S. 63, 70 (2010)).

*Ins. Co.*, 429 F.3d at 87. First, a dispute exists between the parties, as evidenced by the allegations in the Amended Complaint.

Second, the DRA is a written agreement that contains an arbitration clause purportedly governing this dispute. As previously discussed, all parties to this action are covered by the DRA. Moreover, the DRA's arbitration provision "applies to all . . . common law claims, contract and warranty claims, tort claims, statutory claims . . . arising out of or relating to (i) the [Home] . . . (ii) the documents related to the purchase and sale of the Home . . . , (iii) any . . . services, . . . supplemental warranty, service contract, . . . sold under the Contract, [and] (vi) the design and construction of the Home." ECF No. 5-6 at 1. Thus, all of Plaintiff's claims fall within the broadly defined scope of the arbitration agreement.

Third, the Court finds that the agreement affects interstate commerce. Defendant CMH Homes, Inc. is a Tennessee corporation and Defendant Southern Energy Homes, Inc. is a Delaware corporation with its principal place of business in Alabama. The mobile home was manufactured in Alabama and shipped to Plaintiff for installation in South Carolina.

Finally, the fourth element is satisfied as evidenced by the fact that Plaintiff refused arbitration in this action. Thus, the Court finds that a valid arbitration agreement exists and the claims presented fall within its scope. *See AT&T Tech., Inc. v. Commc'ns*

*Workers of Am.*, 475 U.S. 643, 651 (1986); *see also Hooters of Am. v. Phillips*, 173 F.3d 933, 938 (4th Cir. 1999).

***Motion to Dismiss***

The FAA requires a court to stay "any suit or proceeding" pending arbitration of "any issue referable to arbitration under an agreement in writing for such arbitration, and "[t]his stay-of-litigation provision is mandatory." *Adkins*, 303 F.3d at 500; *see also* 9 U.S.C. § 3. However, the Fourth Circuit has also held that if all of the claims asserted in a complaint are subject to arbitration, dismissal of the complaint is "an appropriate remedy." *Choice Hotels Int'l, Inc. v. BSR Tropicana Resort, Inc.*, 252 F.3d 707, 709–10 (4th Cir. 2001). Although the Fourth Circuit has acknowledged the inconsistency between its opinions on this issue, *see Aggarao v. MOL Ship Mgmt. Co.*, 675 F.3d 355, 376 n.18 (4th Cir. 2012) ("There may be some tension between our decision . . . indicating that a stay is required when the arbitration agreement 'covers the matter in dispute'—and *Choice Hotels*—sanctioning dismissal 'when all of the issues presented . . . are arbitrable.'"), presently in this Circuit, a district court must stay an action pending arbitration of any arbitrable claims, with the exception that it may instead dismiss an action if all claims asserted are arbitrable. *See Weckesser v. Knight Enters. S.E., LLC*, 228 F. Supp. 3d 561, 564 (D.S.C. 2017). Here, all claims are subject to arbitration; accordingly, dismissal is appropriate.

## **CONCLUSION**

Therefore, based on the foregoing, Defendants' Motion to Compel Arbitration [5] is **GRANTED** and this action is **DISMISSED**.

IT IS SO ORDERED.

                                            s/ Donald C. Coggins, Jr.
                                            United States District Judge

December 5, 2019
Spartanburg, South Carolina